UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

| | |
|---|---|
| ERIC LAUBIS, ) | |
| Plaintiff ) | Civil Case No.: 5:13-CV-164-KKC |
| ) | |
| v. ) | |
| ) | **MEMORANDUM, OPINION,** |
| ) | **AND ORDER** |
| KATHY H. WITT, ) | |
| Individually, and as Sheriff of ) | |
| Fayette County, Kentucky, ) | |
| Defendant. ) | |

*** *** ***

This matter is before the Court on two motions made by defendant Kathy Witt. Witt's motion for a more definite statement (DE 4) is denied as moot, and her motion to dismiss for failure to state a claim upon which relief can be granted (DE 6) is granted.

**I. BACKGROUND**

Plaintiff Eric Laubis was involved in a personal relationship with Darlene Perkins. In June 2005, Ms. Perkins filed a petition in Fayette County Kentucky Family Court, seeking a domestic violence order (DVO) against Laubis. The court dismissed that petition. In February 2007, Laubis was charged with forth degree domestic violence assault with a minor injury; Ms. Perkins was the victim. (DE 4-1). On May 17, 2007, Laubis pleaded guilty to a lesser charge of harassment, under K.R.S. § 525.070. (DE 5). Laubis concedes that he pleaded guilty to K.R.S. § 525.070(1)(a), which states, "(1) A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she: (a) Strikes, shoves, kicks, or otherwise subjects him to physical contact." (DE 4-1, 5, 7, "case jacket").

In June 2010, Ms. Perkins filed another petition in Fayette County Kentucky Court, again seeking a DVO against Laubis. After a hearing, the court granted the DVO. Pursuant to the DVO, Laubis surrendered at least nine firearms to Sherriff's Deputy, Sgt. R. Stephens. The Fayette County Family Court dismissed the DVO on December 15, 2010. (DE 5).

After the DVO was dismissed, Laubis alleges that he spoke with Deputy Chris Tudor, who indicated that it could take "a year or two for his guns to be released." Laubis was worried when he discovered that Deputy Tudor and others had been charged with using confiscated guns for personal use. At some point, Laubis alleges he contacted the Sherriff of Fayette County, defendant Kathy Witt, who informed him that the "matter was under investigation." On January 14, 2013, the Fayette County Family Court issued an agreed order to release Laubis's firearms surrendered under the DVO. Shortly after the order releasing the firearms was entered, Laubis alleges he telephoned Sheriff Witt, and Witt indicated that, "they would keep his guns regardless of any court order because of the Lautenberg Amendment." (DE 5, DE 1-2). The Lautenberg Amendment is found in 18 U.S.C. § 922(g)(9) and makes it unlawful for an individual "who has been convicted in any court of a misdemeanor crime of domestic violence," to possess any firearm or ammunition.

Laubis now brings claims under 42 U.S.C. § 1983, asserting that by refusing to return Laubis's firearms, Witt has violated Laubis's Second, Fifth, and Fourteenth Amendment rights. Laubis seeks an order compelling Witt to return the firearms, general damages, special damages, punitive damages, and attorney's fees. (DE 5).

**II. Analysis**

When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must regard the "factual allegations in the complaint . . . as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff's factual allegations in the complaint "must

2

be enough to raise a right to relief above the speculative level." *Id.* The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id.* at 570.

**A. Laubis's Alleged Constitutional Deprivations**

As an initial matter, counsel for Laubis and Witt devote significant effort to arguing whether in refusing to return Laubis's firearms, Sheriff Witt correctly interpreted 18 U.S.C. § 922(g)(9), commonly referred to as the Lautenberg Amendment. This effort is misplaced based on the claims Laubis has alleged. The Lautenberg Amendment states in relevant part "It shall be unlawful for anyone . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to possess . . . any firearm or ammunition." 18 U.S.C. § 922(g)(9). In discussing whether Witt properly applied the Lautenberg Amendment, the parties commit the majority of their briefs to debating whether Laubis's conviction for harassment of Ms. Perkins under K.R.S. § 525.070 is a "misdemeanor crime of domestic violence." Laubis contends that a recent Court of Appeals decision, *U.S. v. Castleman*, 695 F.3d 582 (6th Cir. 2012), is dispositive of this issue. In *Castleman*, the Court of Appeals affirmed a district court decision to dismiss a defendant's criminal indictment under 18 U.S.C. § 922(g), because the defendant's conviction of a Tennessee misdemeanor domestic assault did not qualify as a misdemeanor crime of domestic violence since it did not include an element of "strong and violent force." *Id.* at 588. As will be explained later in this Order, *Cattleman* provides little guidance to evaluate the constitutional violations alleged, because it only addresses the interpretation of the criminal statute.

The parties devote considerable attention and argument to the Sheriff's interpretation of a federal statute commonly referred to as the Lautenberg Amendment, which prevents those convicted of domestic violence from possessing firearms. 18 U.S.C. § 922(g)(9). This debate, however, misses the mark and Laubis has failed to assert a violation of a federal right

3

sufficient to state a claim under section 1983. To avoid a 12(b)(6) dismissal, a plaintiff must plead facts beyond "labels and conclusions" of law. *Twombly*, 550 U.S. at 545. In order to proceed under § 1983, Laubis must first assert a plausible "deprivation of [] rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "In order to seek redress through § 1983, [] a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). "This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights *must allege, with particularity, facts* that demonstrate what each defendant did to *violate the asserted constitutional right*." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (emphasis added).

In the instant case, Laubis asserts in his complaint that his Second, Fifth, and Fourteenth Amendment rights were violated. However, neither party has addressed how Witt, acting under the color of state law, violated any of Laubis's rights when she refused to return Laubis's forearms. Instead of focusing on the alleged constitutional violations, the parties concentrate on a violation of federal law, which is not alone actionable under section 1983. Even taking the facts as true, Laubis has not pleaded sufficient facts to show a *plausible* constitutional violation, and thus, each of his section 1983 claims fails as a matter of law. Each alleged violation is discussed below.

### i. The Second Amendment

Count 1 of Laubis's complaint alleges Witt has violated his Second Amendment right to keep and bear arms. (DE 3). This claims is brought under 42 U.S.C. § 1983; the Second Amendment is made applicable to the states through the Fourteenth Amendment. (DE 3); *McDonald v. Chicago*, 130 S.Ct. 3020, 3050 (2010). The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The thrust of Laubis's

4

argument is that Witt has prevented him from keeping and bearing arms by not returning the particular firearms that he lawfully surrendered to the Fayette County Sheriff's Office pursuant to a lawful DVO. (DE 7). Second Amendment jurisprudence is relatively limited, but based on the guidance available, generally the "Second Amendment protects the right to keep and bear arms for the purpose of self-defense." *See McDonald*, 130 S.Ct. at 3026. Because Laubis fails to indicate why the Second Amendment confers a right to bear *specific weapons* that were lawfully seized, as opposed to a general right to bear arms for self-defense, Laubis has failed to state a claim upon which relief may be granted. The Court can find no authority that would indicate such a right exists, and thus, a violation of the right to bear arms as alleged, is not plausible on its face.

### ii. Due Process

To the extent that Laubis has a complaint concerning procedural due process, Laubis's remedy is in state court, not federal court. The Court of Appeals has held:

> Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process. Thus we hold that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong. In the instant case the plaintiff has neither alleged nor shown any significant deficiency in the state's remedies.

*Vicory v. Walton*, 721 F.2d 1062, 1065 (6th Cir. 1983). The *Vicory* requirement of proving inadequacy of state-court remedies applies, "only to random, unauthorized deprivations of property," not allegations of an unconstitutional established state procedure. *Mitchell v. Fankhauser*, 375 F.3d 477, 481–82 (6th Cir. 2004). Laubis alleges this type of random, unauthorized deprivation of property, and thus the requirement of seeking state redress applies. Laubis has not pleaded or provided any facts to show the inadequacy of state

5

procedures. For example, he has not pleaded that he has attempted to enforce the state court order by returning to the state family court for a contempt proceeding, or other means of enforcement; nor has he sought any other relief in state court. Laubis asserts in his amended complaint, "By unlawfully depriving Plaintiff of his right to keep and bear arms, without minimal due process Defendant is damaging Plaintiff in violation of 42 U.S.C. § 1983." However, this is a legal conclusion. This legal conclusion coupled with a pleading of random unauthorized state official behavior, without asserting inadequate state remedies, is unable to survive a 12(b)(6) dismissal.

### iii. The Takings Clause

The Supreme Court has noted that the Takings Clause is designed to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *E. Enters. v. Apfel*, 524 U.S. 498, 522 (1998) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). Laubis has failed to provide any law that would suggest that lawfully seized firearms should be subject to a Takings Clause analysis or would serve the purpose of the Takings Clause. The Court finds no authority for a Takings Clause claim under the circumstances of this matter.

Therefore, even if Laubis is correct that Witt misinterpreted federal law, he has provided no authority indicating that she violated any of Laubis's constitutional rights in the process. Finally, even if Witt did violate Laubis's constitutional rights, she is protected from claims for damages by sovereign and qualified immunity as described more fully below.

### B. Sovereign Immunity

Even if Laubis's claims weren't facially deficient, Laubis's claims in Count I, Count II, and Count III against Witt in her official capacity for money damages fail as a matter of law, because Witt is entitled to sovereign immunity. Claims against county officials in their official capacity are treated as claims against the county itself. *See Shamaeizadeh v. Cunigan*, 338

F.3d 535, 556 (6th Cir. 2003). A county government, however, cannot be held liable under section 1983 for the acts of its employees simply through respondeat superior. *Id.* Rather, Laubis must demonstrate that "a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)). In the present case, Laubis does not allege that Witt's conduct was the result of a custom, policy, or practice of the county government. Therefore, dismissal of Laubis's claims for money damages against Witt in her official capacity is appropriate.

**C. Qualified Immunity**

Even if Laubis's claims were not facially deficient, to the extent that Laubis requests money damages from Witt in her individual capacity, Witt is also protected by qualified immunity. To determine whether a defendant is entitled to qualified immunity, the Court must consider 1) whether the facts alleged show that the conduct by Witt violated Laubis's constitutional right(s), and 2) whether the right was clearly established in light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Both questions must be answered in favor of the plaintiff, or a defendant is entitled to qualified immunity. *Id.* The Court has already determined that Witt's alleged conduct has not violated Laubis's constitutional rights. However, even if Witt's conduct did violate Laubis's rights, Witt would still be entitled to qualified immunity, because none of the constitutional rights alleged are clearly established in light of the context of this case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that a district court need not address the two-step qualified immunity analysis in sequential order).

Ordinarily, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

7

*Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be established in a "particularized" and "relevant sense." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, the unlawfulness of Witt's actions must be apparent under the then-existing law. *Id.*

Laubis's claim is that Witt violated his constitutional rights when Witt incorrectly interpreted the Lautenberg Amendment, which makes it unlawful for an individual guilty of a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a)(33) to possess firearms. Witt refuses to return Laubis's firearms, because she believes Laubis has been convicted of misdemeanor crime of domestic violence and is therefore precluded from possessing firearms. (DE 3). For purposes of determining whether Laubis is entitled to qualified immunity against Laubis's section 1983 claim, this debate is in vain, as even where there is an alleged constitutional violation, that right must be clearly established in light of the context of the case. *Katz*, 533 U.S. at 201. As the Supreme Court has noted, "[q]ualified immunity is applicable unless the official's conduct violated a *clearly established* constitutional right." *Pearson*, 555 U.S. at 232 (emphasis added). Even assuming arguendo that Witt's actions did violate Laubis's constitutional rights, it is not clearly established that an officer's misinterpretation of the Lautenberg Amendment would deprive an individual of his or her constitutional rights. Laubis insists *Castleman* clearly interprets 18 U.S.C. § 921(a)(33) in the context of 18 U.S.C. 922(g)(7) in his favor, and therefore, Witt was on notice that her actions would violate clearly established law. (DE 7). This argument fails.

In *Castleman*, the Court of Appeals decided whether a particular conviction for a crime under a Tennessee statute could constitute a "misdemeanor crime of domestic violence" for purposes of prosecuting a defendant under the Lautenberg Amendment. *Castleman*, 695 F.3d at 585. Even if the Court of Appeals in *Castleman* clearly defined a "misdemeanor crime of domestic violence" within the context of the Lautenberg Amendment, the court's holding had nothing to do with violations of an individual's *constitutional rights*. The Court of Appeals

8

never addressed any of the circumstances in the present case: whether a state officer's refusal to return lawfully seized firearms, based on the officer's alleged misinterpretation of the Lautenberg Amendment, would violate the *constitutional rights* of the owner of the firearms who has resolved the original reason for the surrender of the firearms. In fact, the Court of Appeals' holding in *Castleman* was based solely on statutory interpretation of a criminal statute and had no impact on whether an erroneous interpretation of the statute would violate an individual's *constitutional rights*.

Since Laubis has failed to provide authority to put Witt on notice that her alleged actions would violate clearly established *constitutional rights*, whether Witt's actions *actually* violated his constitutional rights is of lesser importance for purposes of qualified immunity. While the qualified immunity "clearly established" requirement does not require particular case law directly on point, to avoid a defendant's entitlement to qualified immunity, Laubis must at least show that Witt had "fair warning" that the alleged treatment of Laubis was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Court has recently emphasized, "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.[1]" *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). This matter is not a case where the constitutional violation is so "obvious on the facts alleged," and thus, in the absence of any law that would put a reasonable officer on notice of a clearly established constitutional right violation, qualified immunity is appropriate. *See Hope*, 536 U.S. at 731. As the Supreme Court has noted "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant, Jr.*, 502 U.S. 224, 229 (1991) (internal citations omitted).

---

[1] Notably, the Supreme Court has granted certiorari in *Castleman*, the decision on which Laubis heavily relies. *U.S. v. Castleman* 2013 WL 2155706 at *1 (2013) (granting cert); *see also* Brief for Petitioner at *25 *U.S. v. Castleman*, 2013 WL 2155706 (2013) (No. 12-1371) ("The conflicts among the circuits are likely to be a source of confusion for law enforcement and defendants alike."). Thus, while *Castleman* does not directly address the instant case, it helps demonstrate that the issue in this matter is far from being settled "beyond debate."

**III. CONCLUSION**

Accordingly, the Court **HEREBY ORDERS** as follows:

1. Witt's motion for a more definite statement (DE 4) is **DENIED AS MOOT**;

2. Witt's motion to dismiss (DE 6) is **GRANTED**; and

3. Witt's alternative motion for judgment on the pleadings (DE 6) is **DENIED AS MOOT**.

Dated this 20th day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY